IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CHARLES J. GREENE,　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　)　　　Civil Action No. 2:15-cv-892-MHT-WC
　　　　　　　　　　　　　　　　)
ALABAMA DEPT. OF PUBLIC　　　)
HEALTH, d/b/a CHILDREN'S　　　)
HEALTH INSURANCE PROGRAM,　)
　　　　　　　　　　　　　　　　)
　　　　　　Defendant.　　　　　　)

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.　　INTRODUCTION

On December 2, 2015, Charles J. Greene ("Plaintiff"), proceeding *pro se*, filed a complaint (Doc. 1) alleging, in four separate claims, that the Alabama Department of Public Health ("Defendant") violated his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.  Presently before the court is Defendant's Motion for Summary Judgment (Doc. 42) and supporting memorandum (Doc. 43).  Plaintiff did not file a response to the motion.[1]  For the reasons that follow, the court finds that Defendant's motion is due to be granted.

---

[1]  The court's Uniform Scheduling Order (Doc. 22), entered on February 25, 2016, set out the briefing schedule for dispositive motions, including when to file a response in opposition to a motion for summary judgment, directed how the parties should go about providing evidentiary support for their arguments for and against summary judgment, and warned that the "failure to file a response to any motion—either dispositive or non-dispositive—within the time allowed by the Court shall indicate that there is no opposition to the motion."  Doc. 22 at 2-3.  The Certificate of Service included with Defendant's motion indicates that the motion was served on Plaintiff by

## II.     STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court shall grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Only disputes about material facts will preclude the granting of summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Vehicleriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248).

---

deposit in United States first class mail on August 16, 2016. *See* Doc. 42 at 3. This is all that the Federal Rules of Civil Procedure require. *See* Fed. R. Civ. P 5(b)(2)(C).

Over the course of this case, Plaintiff has demonstrated commendable aptitude in understanding the court's orders and rules of the court. He filed a motion to supplement his complaint under Rule 15(d) of the Federal Rules, which was granted. *See* Docs. 28 & 30. He filed a detailed response in opposition to a motion to compel lodged against him by Defendant, *see* Doc. 26, and he appeared at a hearing before the undersigned to defend his position on the motion, eventually resolving the dispute by agreement with counsel for Defendant. He filed motions to compel that, although ultimately denied as untimely, demonstrated his familiarity with the discovery provisions of the Federal Rules and with this court's Guidelines to Civil Discovery Practice. *See* Docs. 33, 38, & 39. Thus, Plaintiff should not be permitted to "use his *pro se* status as a 'defensive shield' from his own neglect." *Wallace v. Ga. Dep't of Transp.*, 212 F. App'x 799, 802-03 (11th Cir. 2006) (finding no error where *pro se* plaintiff argued "that the district court abused its discretion by not notifying him" of the defendant's summary judgment filing "and by not granting him leave to respond" to such pleading because the certificates of service indicated that the plaintiff was served with and had notice of the motions, and the plaintiff had "demonstrated previous proficiency in filing timely motions and responses"). In other words, where Plaintiff was served with the motion and was previously informed of the deadlines and procedures applicable in responding to the motion, and where he has otherwise demonstrated proficiency in prosecuting his case, his *pro se* status should not immunize him from the significant practical consequences of his failure to respond.

Under Rule 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322–23.

Once the movant has satisfied this burden, the nonmoving party must "go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In doing so, and to avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the

3

absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A) & (B).

If the nonmovant "fails to properly address another party's assertion of fact" as required by Rule 56(c), then the court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2) & (3).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the nonmovant.  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).  Likewise, the reviewing court must draw all justifiable inferences from the evidence in the nonmoving party's favor.  *Anderson*, 477 U.S. at 255.  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam).  Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990); *see also Anderson*, 477 U.S. at 249-50 ("If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted).

## III.   STATEMENT OF FACTS

### A.   Uncontested Facts

Pursuant to the scheduling order, *see* Doc. 22 at § 2.5, the parties have jointly agreed that the following facts are uncontested for purposes of Defendant's motion for summary judgment:

Greene, a male, began his employment with ADPH in April 2003 as an Administrative Support Assistant II in the Children's Health Insurance Program ("CHIP"). Greene was promoted to a Health Insurance Assistant ("HIA") in October 2005.

Greene submitted his letter of resignation in August 2014, to be effective August 16, 2014. Greene left ADPH to accept a higher paying job (promotion) at the Alabama Department of Revenue. Greene left his employment with ADPH in good standing.

Greene's job duties were listed on his official Position Classification Questionnaire document at ADPH, and approved by State Personnel.

On October 3, 2013, Greene filed a charge of discrimination (no. 420-2014-00079) with the EEOC complaining that he was discriminated against based on gender when he received his 2013 Performance Appraisal score.

On June 19, 2014, Greene field another EEOC charge of discrimination (no. 420-2014-02285) complaining of discrimination based on gender and retaliation when he received a counseling for calling in sick on Saturdays.

On October 10, 2014, Greene filed another EEOC charge of discrimination (no. 420-2015-00088) complaining of discrimination based on gender and retaliation when he received his 2014 performance appraisal score.

This charge was filed after Greene voluntarily resigned from ADPH in August 2014 (ADPH did not terminate Greene's employment; he left ADPH in good standing).

The EEOC issued Greene his Right to Sue letters on September 1, 2015, for the following charges: 420-2014-00079; 420-2014-01498;[2] and 420-2015-00088.  The EEOC issued Greene a Right to Sue letter on February 11, 2016, for charge 420-2014-02285.

Greene filed this lawsuit on December 2, 2015.

### B.   Contested Facts

Apart from the above agreed-upon uncontested facts, Defendant's memorandum presents several "contested facts."  *See* Doc. 43 at 4-13.  Defendant's memorandum properly cites to evidentiary support in the record for all assertions of contested facts.  In failing to respond to Defendant's contested facts, Plaintiff plainly has failed to cite to "particular parts of materials in the record" tending to show that an asserted fact is genuinely disputed or otherwise show that "materials cited do not establish the . . . presence of a genuine dispute[.]"  Fed. R. Civ. P. 56(c)(1)(A) and (B).  As such, the court may consider Defendant's assertions of contested facts as "undisputed for the purposes of the motion."  Fed. R. Civ. P. 56(e)(2).  Based upon the lack of any dispute of Defendant's statement of contested facts, the undersigned recommends adoption of the entirety of Defendant's statement of contested facts but, for the sake of economy, will not restate the entirety of Defendant's statement in this Recommendation.  Instead, the undersigned offers the following summary of pertinent facts related to the motion for summary judgment.

---

[2]  Plaintiff filed EEOC charge no. 420-2014-1498 on March 25, 2014, and amended it on April 2, 2014.  Compl. (Doc. 1) at ¶ 9(2).  This charge alleged that Plaintiff was retaliated against for his filing of EEOC charge no. 420-2014-00079.  *Id.* ¶¶ 25-29.

Plaintiff's employment as an HIA required him to process applications and determine eligibility for families attempting to enroll their children in CHIP.  In the time period relevant to this matter, HIAs were evaluated for their performance in job functions known as "Responsibilities/Results" or R&Rs.   According to Plaintiff's immediate supervisor, Maria Kamburis, there were seven R&Rs for which HIAs were evaluated.

> R&R #1 is a production based job duty.  R&R #2 is checking Medicaid to prevent dual enrollments (quality based).  R&R #3 is calculating correct income and family size (quality based).  R&R #4 is getting supporting documentation and explaining needed information to applicants (communication skills based).  R&R #5 is ensuring that all children are enrolled, working with supervisor to solve problems (program policy knowledge based).  R&R #6 is data accuracy (quality based).  R&R #7 is the ability to explain CHIP to applicants (communication skills based).

Affidavit of Kamburis at ¶ 3, Ex. 5 to Def.'s Mem. (Doc. 43-5).  According to Plaintiff's supervisors, while Plaintiff's production—meaning, the number of applications he processed—was above average, Plaintiff made too many errors.  *Id.*; Affidavit of Keith Wright at ¶ 4, Ex. 3 to Def.'s Mem. (Doc. 43-3).  According to the Director of Program Services for CHIP, Keith Wright, "[t]here is no acceptable maximum error rate for a HIA.  An emphasis is placed on accuracy and zero errors, because even one error can impact whether a child receives health insurance or not."  *Id.* at ¶ 5.  According to another supervisor, Wanda Davis, the Eligibility Director for CHIP, Plaintiff's "errors were repetitive in nature."  Affidavit of Davis at ¶ 4, Ex. 6 to Def.'s Mem. (Doc. 43-6).  Although Davis and Kamburis periodically counseled Plaintiff about his errors, and provided instruction on how to correct his errors and improve performance, Plaintiff continued to make "the same types of errors."  *Id.*

7

Plaintiff's complaints of discrimination and retaliation are based upon four distinct events: his yearly performance reviews in the years 2013 and 2014, which Plaintiff derisively describes as "middling," and alleged disciplinary events occurring in October of 2013 and June of 2014. Compl. (Doc. 1) at ¶¶ 19-39. On April 15, 2013, Plaintiff received a "Meets Standards" rating on his annual performance review. Affidavit of Brent Hatcher at ¶ 4, Ex. 2 to Def.'s Mem. (Doc. 43-2). Plaintiff's "Performance Appraisal Score," 24.3, consisted of the average of his one through four ratings in each of the seven R&Rs (2.43), multiplied by ten, after then subtracting his "Disciplinary Score" (zero). Plaintiff's Performance Appraisal Score placed him in the upper range of the "Meets Standards" rating, which embraces scores from 16.7 through 26.6. Plaintiff's supervisors determined that he warranted a "meets standards" rating because some of his errors would have been corrected or avoided if he had communicated with parents, and because his errors in processing applications and correctly enrolling applicants demonstrated less than exemplary knowledge of the CHIP Program. Davis Aff. (Doc. 43-6) at ¶ 3. Plaintiff's performance was deemed "satisfactory" with respect to attendance, punctuality, cooperation with coworkers, and compliance with rules. Apart from the annual incremental pay raise reflected on the Performance Appraisal, Plaintiff's "job performance, job duties, title and pay did not change after he received his 2013 performance appraisal." Hatcher Aff. (Doc. 43-2) at ¶ 5.

On September 18, 2013, Kamburis received a complaint that Plaintiff was using profanity at his workstation. Kamburis Aff. (Doc. 43-5) at ¶ 5. Kamburis "counseled Greene for this complaint on September 25, 2013." *Id.* On October 3, 2013, Kamburis

8

"gave Greene the paper documentation of the counseling session held on September 25, 2013." *Id.* at ¶ 6.  Plaintiff alleges that Kamburis's presentation of the paper documentation of the prior counseling session followed his actions earlier that day in faxing to the EEOC a Charge of Discrimination concerning the allegedly discriminatory performance appraisal discussed above and a subsequent phone call to the EEOC to confirm receipt of the fax. Compl. (Doc. 1) at ¶¶ 25-27.  In any event, "[c]ounseling is a formal process to help an employee with an area that needs development or correction.  Greene did not lose any compensation, Greene was not further disciplined, and Greene was not denied promotional opportunities" based upon his October 3rd receipt of the counseling document.  Hatcher Aff. (Doc. 43-2) at ¶ 6.

On April 16, 2014, Plaintiff received another "Meets Standards" rating in his yearly performance review.  Plaintiff's scoring in this review—both in his performance in the R&Rs and his disciplinary score—was identical to his scoring in the prior, allegedly discriminatory, review from 2013.  Plaintiff's supervisors determined that Plaintiff's performance merited the "Meets Standards" rating for the same reasons previously articulated with respect to his performance in 2013.  Davis Aff. (Doc. 43-6) at ¶ 3.  *See also* Wright Aff. (Doc. 43-3) at ¶ 8 (noting Plaintiff's eleven errors during the relevant period, "[t]he most errors of all HIAs during this time period").  Once again, apart from a yearly incremental pay raise reflected on the performance appraisal, Plaintiff's "job performance, job duties, title, and pay did not change after he received his 2014 performance appraisal[.]"  Hatcher Aff. (Doc. 43-2) at ¶ 8.

In late April 2014, Wright notified staff that, "due to the backlog of applications[,] mandatory Saturday work for Distribution and Enrollment Staff would begin on May 3, 2014." Wright Aff. (Doc. 43-3) at ¶ 11. Work was mandatory for HIAs on six Saturdays in May and June. *Id.* Plaintiff "called in sick on every scheduled Saturday except for Saturday May 17, 2014, when he left a voice mail message that he would not be able to work because he had to get his eye glasses fixed." *Id.* Plaintiff was counseled on June 13, 2014, "for failing to show up for Saturday work sessions." *Id.* at ¶ 12. Once again, "[c]ounseling is a formal process to help an employee with an area that needs development or correction. Greene did not lose any compensation, Greene was not further disciplined, and Greene was not denied promotional opportunities" due to the counseling he received for his failure to work on Saturdays. While Plaintiff alleges that his June 2014 counseling was discriminatory because "female HIAs were allowed liberal leave for these Saturday sessions, even though they were not sick on the Saturdays for which they were excused," at least three female HIAs were in fact also counseled for failing to attend Saturday work sessions. Wright Aff. (Doc. 43-3) at ¶ 13.

## IV.   DISCUSSION

Plaintiff's complaint alleges Title VII claims for discrimination and retaliation based upon the four events described previously. Specifically, Plaintiff claims that he was discriminated against, on the basis of his gender, when he was given a "middling" performance appraisal in April of 2013 (Compl. (Doc. 1) at ¶¶ 20-23); that he was retaliated against when he was counseled on the profanity complaint of a coworker in October of 2013 (*id.* at ¶¶ 25-29); that he was discriminated against, based on his gender,

10

and retaliated against when he was counseled for missing Saturday work sessions in June 2014 (*id.* at ¶¶ 31-33); and that he was discriminated against, on the basis of his gender, and retaliated against when he received another "middling" performance appraisal in April of 2014 (*id.* at ¶¶ 35-39). Defendant seeks summary judgment on each of Plaintiff's claims, arguing that Plaintiff has failed to establish any *prima facie* claim for gender-based discrimination or retaliation under Title VII and, even if he could establish a *prima facie* claim of discrimination or retaliation, he is unable to rebut Defendant's legitimate non-discriminatory and non-retaliatory reasons for its employment decisions. Def.'s Mot. (Doc. 42) at 2. The court will below examine each of Plaintiff's claims within the legal framework applicable to such claims.

### A.   Title VII Discrimination Claims

#### 1.   Legal Standards

A Title VII disparate treatment claim premised on gender requires a *prima facie* showing of discriminatory intent, *E.E.O.C. v. Joe's Stone Crab*, 220 F.3d 1263, 1286 (11th Cir. 2000), which "can be established three ways: 1) direct evidence; 2) circumstantial evidence; or 3) statistical proof." *Davis v. City of Panama City, Fla.*, 510 F. Supp. 2d 671, 681 (N.D. Fla. 2007) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)). Plaintiff has not provided direct evidence that discrimination based upon his gender was the reason for any alleged adverse employment action, nor has he proffered statistical evidence or evidence of a pattern of discrimination in this case. Because Plaintiff's discrimination claim therefore relies on, if anything more than his bare

11

allegations, circumstantial evidence, the claim is analyzed under the burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

Under the *McDonnell Douglas* framework, a plaintiff must first create a presumption of discrimination by establishing a *prima facie* case. *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff establishes a *prima facie* case, then the burden shifts to the employer to show a legitimate, non-discriminatory reason for its employment action." *Burke-Fowler v. Orange Cty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (citing *Joe's Stone Crab, Inc.*, 220 F.3d at1286). If the employer does so, the burden shifts again to the plaintiff to "prove that the reason provided by the defendant is a pretext for unlawful discrimination." *Id.*

As noted above, "the plaintiff first has the burden of establishing a *prima facie* case of discrimination, which creates a rebuttable presumption that the employer acted illegally." *McCalister v. Hillsborough Cty. Sheriff*, 211 F. App'x 883, 884-85 (11th Cir. 2006). To establish a *prima facie* case for disparate treatment in violation of Title VII, the plaintiff must show that: "(1) [he] is a member of a protected class; (2) [he] was subjected to an adverse employment action; (3) [his] employer treated similarly situated employees outside of [his] protected class more favorably than [he] was treated; and (4) [he] was qualified to do the job." *Burke-Fowler v. Orange Cty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006).

As to the second prong, the requirement of an adverse employment action, "not all conduct by an employer negatively affecting an employee constitutes adverse employment action." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001).

12

> [T]o support a claim under Title VII's anti-discrimination clause the employer's action must impact the "terms, conditions, or privileges" of the plaintiff's job in a real and demonstrable way.  Although the statute does not require proof of direct economic consequences in all cases, the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment.

*Id.*  The employee "must show a *serious and material* change in the terms, conditions, or privileges of employment" and "the employee's subjective view of the significance and adversity of the employer's action is not controlling."  *Id.*  Rather, a reasonable person in the same circumstances must find the employment action materially adverse.  *Id.*

> As to the third prong of the *prima facie* test, in order to identify a viable comparator, the plaintiff must show that he and the employees are similarly situated in all relevant respects.  *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 17 (1st Cir. 1994); *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992); *Smith v. Monsanto Chemical Co.*, 770 F.2d 719, 723 (8th Cir. 1985), *cert. denied*, 475 U.S. 1050 (1986).  In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.  *Williams v. Ford Motor Co.*, 14 F.3d 1305, 1309 (8th Cir. 1994).  *If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present.  See, e.g., Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 182 (1st Cir. 1989).

*Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (emphasis in original).  A proper comparator is an employee outside of the plaintiff's protected class who is similarly situated to the plaintiff "in all relevant respects."  *Coar v. Pemco Aeroplex, Inc.*, 372 F. App'x 1, 3 (11th Cir. 2010) (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004)).  "This prevents 'courts from second-guessing employers' reasonable

13

decisions and confusing apples with oranges.'"  *Id.* (quoting *Burke-Fowler*, 447 F.3d at

1323).

> [I]n disciplinary contexts, the quality and quantity of a comparator's conduct
> must be nearly identical to the plaintiff's in order to prevent courts from
> second-guessing a reasonable decision by the employer.  *Maniccia v. Brown*,
> 171 F.3d 1364, 1368-69 (11th Cir. 1999).   While not always the case,
> differences in treatment by different supervisors or decisionmakers can
> seldom be the basis for a viable claim of discrimination. [*Silvera v. Orange
> County Sch. Bd.*, 244 F.3d 1253, 1259 n.5 (11th Cir. 2001)].

*Foster v. Biolife Plasma Servs., LP*, 566 F. App'x 808, 811 (11th Cir. 2014).

Where a plaintiff succeeds in establishing a *prima facie* case of discrimination,

under *McDonnell Douglas* the burden then shifts to the employer to provide "legitimate,

nondiscriminatory reasons for the challenged employment action."  *Combs v. Plantation

Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997).  This burden is "exceedingly light," as the

employer must merely proffer a non-discriminatory reason for the adverse employment

action, not prove it.  *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994)

(quoting *Perryman v. Johnson Prods. Co., Inc.*, 698 F.2d 1138, 1142 (11th Cir. 1983)).

Once the employer has proffered a legitimate nondiscriminatory reason for the

adverse employment decision, the plaintiff "then has the ultimate burden of proving the

reason to be a pretext for unlawful discrimination."  *Denney v. City of Albany*, 247 F.3d

1172, 1183 (11th Cir. 2001).  In order to prove that a defendant's articulated reason is a

pretext, a plaintiff must demonstrate not only that the reason is false, but also that

intentional discrimination was the real reason.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S.

502, 515 (1993) ("[A] reason cannot be proved to be 'a pretext for discrimination' unless

14

it is shown *both* that the reason was false, *and* that discrimination was the real reason." (emphasis in original)).  To survive a motion for summary judgment, a plaintiff must rebut every legitimate, nondiscriminatory reason for the employment decision. *Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1308 (11th Cir. 2007).

### 2.    Application

Upon careful consideration of the complaint, Defendant's motion and supporting memorandum, and the record evidence submitted in support of the motion, the undersigned concludes that Plaintiff has failed to establish a *prima facie* case of discrimination with respect to any of the three allegedly discriminatory actions taken against him by his employer.  Plaintiff complains of two "middling" performance appraisals and one disciplinary action—a counselling he received for missing mandatory Saturday work sessions—as alleged discriminatory adverse employment actions.  However, "middling" or not, Plaintiff's performance appraisals simply do not amount to adverse employment actions for purposes of Title VII.  Plaintiff does not allege any appreciable consequence of the "middling" performance appraisals.  Indeed, as set forth above, his position and the conditions of his employment remained the same; Plaintiff even received his yearly pay raise following the performance appraisal.  To the extent Plaintiff believes that the "middling" performance appraisals may inhibit his future employment prospects, *see* Compl. (Doc. 1) at ¶ 40.A & 40.C (requesting an order "that defendant take action to insure that records of unfair evaluations . . . are prevented from being accessed by prospective employers"), he still has not demonstrated an adverse employment action for purposes of establishing a *prima facie* discrimination case.  *See Davis*, 245 F.3d at 1239-1243 (rejecting

argument that placement in employee file of "job performance memoranda" that plaintiff argued were "unwarranted, diminished his prestige and self-esteem, and potentially may interfere with (unspecified and unexplored) future job prospects" were adverse employment actions where memorandums did not have a "tangible impact on the terms, conditions, or privileges of employment"); *id.* at 1343 ("A negative evaluation that otherwise would not be actionable will rarely, if ever become actionable merely because the employee comes forward with evidence that his future prospects have been or will be hindered as a result."). Here, where Plaintiff has not even alleged that his "middling" performance appraisals have (or will) inhibit his future prospects, and they are not otherwise actionable because they did not effect a change in the "terms, conditions, or privileges" of his employment, the undersigned cannot conclude that the appraisals constituted adverse employment actions for purposes of Title VII. As such, Plaintiff has failed to establish a *prima facie* case of gender-based discrimination respecting his claims that he received discriminatory "middling" performance reviews.

Even if Plaintiff could establish a *prima facie* case with respect to his performance appraisals, Defendant has provided legitimate, non-discriminatory reasons for Plaintiff's "middling" performance appraisals. In short, as recounted in the above statement of facts, any perceived negative aspect of Plaintiff's performance appraisal was based primarily upon the number of errors Plaintiff made in performing the functions of his job. Notwithstanding Plaintiff's allegation that, because of his higher levels of production, his "error rate" was consistent with female employees who received more favorable reviews, *see* Compl. (Doc. 1) at ¶¶ 21 & 36, Defendant has demonstrated that, because of the

significance any error may portend for a family attempting to obtain health insurance for a child, it is concerned more with eliminating all errors rather than simply the rate at which errors are made. As set forth above, in Plaintiff's supervisors' judgment, Plaintiff simply made too many errors to warrant a higher performance appraisal. Thus, Defendant has provided legitimate, non-discriminatory reasons for Plaintiff's "middling" performance appraisal. In failing even to respond to Defendant's motion, Plaintiff plainly has not proven that Defendant's proffered reasons are pretext for intentional discrimination based upon Plaintiff's gender.

Likewise, Plaintiff has failed to establish a *prima facie* case of gender-based discrimination with respect to his disciplinary counseling for missing mandatory Saturday work hours. Plaintiff does not allege that the counseling form caused any change in the "terms, conditions, or privileges" of his employment. As Defendant has established, the counseling was not a disciplinary action that caused Plaintiff to accrue disciplinary points that would later affect his performance appraisal. Indeed, both of Plaintiff's subject performance appraisals reflected that he received cumulative disciplinary scores of zero. Thus, the counseling was not an adverse employment action for Title VII purposes. *See Davis*, 245 F.3d at 1240 (finding a "counseling memorandum" that only "express[ed] concern and criticism" about an employee's performance, and was therefore less than a "formal reprimand" and did not cause any "tangible consequence" with regard to "loss of pay or benefits or further discipline" was not actionable). To the extent Plaintiff is concerned about any effect the counseling might have on future employment prospects, for

the reasons given above, such concern is speculative and will not render the counselling an adverse employment action for purposes of Title VII.  *Id.* at 1243.

Plaintiff also has not alleged a viable comparator for purposes of establishing a *prima facie* case.  Although he alleges that "female HIAs were allowed liberal leave for these Saturday sessions, even though they were not sick on the Saturdays for which they were excused," Compl. (Doc. 1) at ¶ 32, he does not name any specific female HIA who failed to attend all mandatory Saturday work sessions.  Regardless of this failing, as set forth above, Defendant has provided evidence that at least three female HIAs were counseled for failing to attend Saturday work sessions.

For all of the foregoing reasons, Plaintiff has not established a *prima facie* case of discriminatory treatment with respect to any of the three such claims presented in the complaint.  Moreover, with regard to Plaintiff's claims that his performance appraisals were discriminatory adverse employment actions, Defendant has provided legitimate, non-discriminatory reasons for its actions which Plaintiff has failed to rebut and disprove.  As such, Defendant is entitled to summary judgment on all of Plaintiff's Title VII discrimination claims.

## B.    Title VII Retaliation Claims

### 1.    Legal Standard

Retaliation claims under Title VII are considered within the same burden-shifting framework as are discrimination claims under the statute.

Title VII . . . prohibits retaliation against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any

> manner in an investigation, proceeding, or hearing [thereunder]." 42 U.S.C.
> § 2000e-3(a). A *prima facie* case of retaliation under Title VII requires the
> plaintiff to show that: (1) [he] engaged in an activity protected under Title
> VII; (2) [he] suffered an adverse employment action; and (3) there was a
> causal connection between the protected activity and the adverse
> employment action. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266
> (11th Cir. 2001).

*Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). If a plaintiff can establish a *prima facie* case of retaliation, "the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action." *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 507 n.6 (11th Cir. 2000). "If the defendant offers legitimate reasons, the presumption of retaliation disappears. The plaintiff must then show that the employer's proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct." *Id. See also Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1310-11 (11th Cir. 2016).

In order to establish an adverse employment action for purposes of a *prima facie* Title VII retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quotations omitted). This standard is "more liberal" than the standard for adverse employment actions under the discrimination provisions and, therefore, "'protects an employee from a wider range of conduct than the discrimination provision does.'"

*Crawford*, 529 F.3d at 974 (quoting *Phelan v. Cook Cty.*, 463 F.3d 773, 781 n.3 (7th Cir. 2006)).

With respect to the third prong, showing a causal connection between the statutorily protected expression and the adverse employment action, "'[t]o establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated.'" *Shannon v. Bellsouth Telecomm., Inc.*, 292 F.3d 712, 716-17 (11th Cir. 2002) (quoting *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000). Close temporal proximity between the protected activity and the adverse action may be enough to establish that the protected activity and an adverse action were not wholly unrelated. *Id.* (citing *Bass v. Bd. of Cty. Comm'rs*, 256 F.3d 1095, 1119 (11th Cir. 2001)).

Even where a plaintiff establishes a *prima facie* case of retaliation, the plaintiff still must prove that the employer's desire to retaliate against the plaintiff was the "but-for" cause of the alleged retaliatory action. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, __ U.S. __, __, 133 S.Ct. 2517, 2528 (2013). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* at 2533.

## 2.    Application

Plaintiff alleges three distinct claims for retaliation in the complaint. He alleges he was retaliated against when he was counseled for his use of profanity; when he was counseled for missing mandatory Saturday work sessions; and when he was given a

"middling" performance appraisal in 2014.  Compl. (Doc. 1) at ¶¶ 29, 33, & 39.  The undersigned will address each in turn.

Plaintiff's first claim, that his 2013 counseling for profanity use constituted retaliation, fails to establish a *prima facie* case because Plaintiff has not shown that the counseling was materially adverse for purposes of Title VII's retaliation provisions.  First, Plaintiff does not "allege that it had any significant impact on his employment."  *See Hall v. Dekalb Cty. Gov.*, 503 F. App'x 781, 790 (11th Cir. 2013) (finding no materially adverse action where, although plaintiff alleged that a "written counseling" was unjustified, "he failed to explain how it negatively impacted his employment").  *See also Perry v. Rogers*, 627 F. App'x 823, 832 (11th Cir. 2015) (finding that an employee's written counseling could not support a claim for retaliation because the employee did not demonstrate that "it negatively impacted" the employee "in a material way" and the counseling "did not constitute formal discipline" under the employer's disciplinary policy).  Furthermore, there is no allegation, much less any showing, that the written counseling—which, again, under Defendant's formal disciplinary policy is less than a disciplinary action with tangible consequences for the employee—would dissuade a reasonable employee from making a charge of discrimination.  Indeed, it certainly did not dissuade Plaintiff, who filed at least three additional charges of discrimination after the alleged retaliatory counseling.  In other words, the counseling was simply too trivial to constitute a materially adverse employment action.  *Crawford*, 529 F.3d at 973 n.13.  Plaintiff has not established a *prima facie* case with respect to his 2013 counseling for profanity use in the workplace.

Case 2:15-cv-00892-MHT-WC   Document 46   Filed 02/03/17   Page 22 of 23

For the same reasons, Plaintiff's 2014 counseling for missing mandatory Saturday work sessions was not materially adverse for purposes of Title VII's retaliation provisions. As with his claim regarding the 2013 counseling, Plaintiff does not allege that the 2014 counseling had any significant impact on his employment. *Hall*, 503 F. App'x at 790; *Perry*, 627 F. App'x at 832. Nor has he established, or even alleged, that the 2014 counseling would dissuade a reasonable employee from making a charge of discrimination. Indeed, Plaintiff filed at least two additional charges of retaliation, including one before he voluntarily left employment with Defendant, after the 2014 counseling. As such, like his 2013 counseling, the 2014 counseling was simply too trivial to constitute a materially adverse employment action for purposes of Title VII's retaliation provisions. Accordingly, Plaintiff has failed to establish a *prima facie* claim of retaliation with respect to this claim.

Plaintiff's final claim of retaliation is based upon his "middling" 2014 performance review. Assuming, without finding, that Plaintiff could establish a *prima facie* case of retaliation with respect to this claim, for the reasons set forth with respect to Plaintiff's discrimination claim related to the 2014 performance appraisal, Defendant still is entitled to summary judgment. As discussed previously, Defendant has provided legitimate reasons—namely, Plaintiff's errors and less than exemplary performance in some of the R&Rs—for the "middling" performance appraisal. Plaintiff has not rebutted and disproved Defendant's legitimate reasons for its actions. Accordingly, Plaintiff has not shown that Defendant's legitimate reasons were a pretext for retaliation. Defendant is entitled to summary judgment on this claim.

22

## V.      CONCLUSION

For all of the foregoing reasons, the undersigned Magistrate Judge hereby RECOMMENDS that Defendant's Motion for Summary Judgment (Doc. 42) be GRANTED, and that the complaint be dismissed with prejudice.  It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **February 17, 2017**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive, or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 3rd day of February, 2017.

/s/ Wallace Capel, Jr.
UNITED STATES MAGISTRATE JUDGE

23